## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RANDY DUNKUM,

      Petitioner,

v.                               Case No. 8:22-cv-2702-WFJ-AEP

SECRETARY, Department
of Corrections,

      Respondent.

_____/

## <u>ORDER</u>

Before the Court is Petitioner Randy Dunkum's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2554. Dkt. 1. The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition. Dkt. 7. Upon careful consideration, the Court finds that an evidentiary hearing is unnecessary and dismisses the petition as untimely.

## BACKGROUND

On October 7, 2013, Petitioner was charged with sexual battery on a person twelve years or younger by a person eighteen years or older in violation of section 794.011(2)(a), Florida Statutes—a capital felony subject to a mandatory life sentence in Florida. Dkt. 7-2 at 7. The State subsequently filed a notice of intent to use evidence of other crimes, wrongs, or acts against Petitioner in the proceeding.

*Id.* at 20. On October 6, 2014, the state court held a hearing on the admissibility of minor witnesses C.L. and C.P.'s testimony concerning Petitioner's wrongdoing against minor victim A.D. *Id.* at 58. The state court did not rule on this issue before Petitioner entered into a plea agreement.

On October 17, 2014, Petitioner entered a no-contest plea to the negotiated charge of attempted sexual battery on a child less than twelve years old by a person eighteen years of age or older. *Id.* at 123. The Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida, sentenced Petitioner to fifteen years in prison followed by twenty-four months of sex offender probation. *Id.* at 142−48. Florida's Second District Court of Appeal affirmed the sentence on December 18, 2015. *Id.* at 188. Petitioner then filed a petition for writ of habeas corpus pursuant to Florida Rules of Appellate Procedure 9.100 and 9.141, alleging ineffective assistance of appellate counsel. *Id.* at 194. On March 16, 2016, the Second District Court of Appeal denied the petition. *Id.* at 208.

On August 15, 2016, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* at 210. The post-conviction court rejected six claims raised by Petitioner, and the state appellate court affirmed per curium. *Id.* at 499, 783. On May 16, 2022, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). *Id.*

at 787. After amendment on June 3, 2022, the state court denied the motion on August 23, 2022. *Id.* at 794, 799.

On November 18, 2022, Petitioner filed the instant petition claiming ineffective assistance of counsel due to 1) failure to conduct an adequate pretrial investigation concerning state witness C.P. and 2) failure to inform Petitioner of the overall weaknesses of the State's case before Petitioner's entry of a no-contest plea. Dkt. 1. On March 2, 2023, Respondent filed a response in opposition. Dkt. 7.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") governs the instant petition. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). The AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction:

> [o]n a claim "that was adjudicated on the merits in the State court proceedings" unless the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Established Federal law" means holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to"

requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotations omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002).

## DISCUSSION

### I.   Timeliness

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1). Time begins when the judgment becomes final by the

conclusion of direct review or the expiration of the time for seeking such review. *Id.* § 2244(d)(1)(A). Time stops running when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Here, Petitioner's judgment and sentence became final on March 17, 2016. Dkt. 7-2 at 188. This means that the one-year limitations period began to run on March 18, 2016. According to § 2244(d)(2), this limitation period is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment is pending." Petitioner's motion for post-conviction relief therefore tolled the limitations period when it was filed on August 15, 2016, after 150 days of the limitations period had already passed. Dkt. 7-2 at 210. Post-conviction relief was denied on appeal on November 15, 2021, causing the limitation period to resume. *Id.* at 783. After another 182 days of the limitations period had passed, Petitioner's motion to correct illegal sentence, subsequently filed on May 16, 2022, tolled the statute of limitations further. *Id.* at 787. The limitations period did not resume until the time to appeal the denial of that motion had expired. *Id.* at 799.

The statute of limitations ultimately went back into effect on September 22, 2022. With 150 days passing between the direct appeal becoming final and the motion for post-conviction relief, and another 182 days passing between the denial

of post-conviction relief and the filing of the motion to correct illegal sentence, Petitioner had 33 days remaining under the statute of limitations. Accordingly, the instant petition needed to have been filed by October 25, 2022, to be timely. Petitioner filed the instant petition on November 18, 2022. Dkt. 1-1. It follows that the instant petition is untimely and due to be dismissed.[1]

## II.    Merits

Notwithstanding the untimeliness of the instant petition, the Court will address each of Petitioner's claims on the merits. Petitioner has presented two claims for federal habeas corpus relief, both based on alleged ineffective assistance of counsel.

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that Petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The petitioner carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish deficient performance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of

---

[1] Petitioner is not entitled to equitable tolling. For equitable tolling to apply, Petitioner must show that 1) he was pursuing his rights diligently and 2) extraordinary circumstance stood in the way of achieving timely filing. *Holland v Florida*, 560 U.S. 631, 649 (2010). The timing between Petitioner's actions leads the Court to conclude that Petitioner failed to pursue his rights with diligence. And with no evidence suggesting that extraordinary circumstances prevented Petitioner from filing his instant petition by October 25, 2022, there is no basis for equitable tolling.

reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Instead, the question is "whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted[.]" *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner's claim fails if either of the *Strickland* prongs is not met. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In the habeas context, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (quoting *Richter*, 562 U.S. at 105).

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding. . . . [I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance v. Warden*, *Ga. Diagnostic Prison,* 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Given this, the Court will review the claims as they were decided by the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida. Dkt. 7-2 at 499. This is "the highest state court decision reaching the merits of the petitioners claim," *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1345 (11th Cir. 2010), as the state appellate court affirmed per curium, Dkt. 7-2 at 783.

### a. Ground One

In Ground One, Petitioner alleges trial counsel provided ineffective assistance by failing to conduct an adequate pretrial investigation and subsequently failing to inform Petitioner that the State's *Williams*[2] rule witness, C.P., likely would not

---

[2] *Williams v. State,* 110 So.2d 654 (Fla. 1959). Holding of the Florida Supreme Court allowing introduction of other crimes, wrongs, or acts as evidence in trial in order to corroborate victim testimony. Codified in Florida Statute § 90.404(2)(a).

testify at trial due to a lack of credibility. Petitioner further states that trial counsel did not take extra time to ensure that Petitioner understood the impact of these facts before entering into the plea agreement, despite Petitioner's permanent mental disabilities. Petitioner alleges he would not have plead guilty had he known of the lack of *Williams* rule proof. Respondent maintains that this claim is not exhausted for federal habeas review purposes.

A federal habeas claim fails to qualify as "exhausted" where "the petitioner failed to exhaust state remedies, and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Henderson v. Campbell*, 353 F.3d 880, 898−99 (11th Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Petitioners are responsible for bringing their claims to the appropriate state court proceedings. If the petitioner has raised new points to support his or her claim, that claim is barred from consideration. Federal courts cannot hear the merits of procedurally barred claims absent showing 1) cause for the default and actual prejudice growing out of the alleged violations of federal law or 2) a resulting fundamental miscarriage of justice if the federal court does not consider the claims. *Murray v Carrier*, 477 U.S. 478, 485 (1986).

There is a material distinction between the present claim and the claim filed by Petitioner in his appeal for post-conviction relief. Dkt. 7-2 at 726. In Petitioner's

post-conviction motions, there are also variations of the claim presented. *Id.* at 217, 317. There, Petitioner alleged counsel was ineffective because counsel did not present evidence at the *Williams* rule hearing concerning C.P.—not because counsel failed to inform Petitioner of C.P.'s credibility issues. *Id.* at 720. Because of this difference, the only claim that this Court can consider is one of alleged ineffective assistance of counsel for failure to adequately investigate witness C.P. This would, in turn, bar the instant assertions that mental disabilities prevented the Petitioner from understanding the importance of C.P.'s alleged lack of credibility. *See* Dkt. 1 at 5. The assertions in Ground One regarding Petitioner's mental disabilities are therefore beyond the Court's ability to consider.[3]

In considering the claim to the extent that it could be deemed exhausted, Petitioner asserts that the state court unreasonably applied *Strickland* when it found that Petitioner was aware of C.P.'s recantations and credibility issues because Petitioner was present at the *Williams* rule hearing. Petitioner asserts that he could not fully appreciate C.P.'s lack of credibility as a witness. Dkt. 1.

The Court agrees with the state court's findings and application of relevant law. In denying Petitioner's claim, the post-conviction court stated:

---

[3] Petitioner's claim that mental disabilities prevented his understanding of C.P.'s potential lack of credibility does not rise to the level of a fundamental miscarriage of justice that would allow this Court to examine the procedurally barred claims. *Murray v Carrier*, 477 U.S. 478, 485 (1986). The record shows that Petitioner had multiple opportunities to raise claims of mental deficiency in conjunction with this ground yet did not raise that issue. Beyond this, Petitioner denied having any mental illness or disease when entering his plea. Dkt. 7-2 at 133.

Counsel was clearly aware of C.P.'s recantations to friends, family members, law enforcement, and attorneys, as well as her possible motives for lying, and the outcome of the law enforcement investigation conducted into her initial claims. *See* Attachments 4 and 5. Thus, Defendant's claim fails the first prong of the *Strickland* test.

But even if Counsel's performance was deficient, Defendant did not successfully prove that he would have rejected the plea deal and insisted on going to trial. "[I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial." *Grosvenor v. State*, 874 So. 2d 1176, 1181–82 (Fla. 2004). Here, Defendant entered a negotiated plea for a much lower sentence than the maximum he was facing at trial.

More importantly, though, as the State points out in its response, there was one other similar fact witness ready to testify regarding previous crimes. *See* Attachments 2 and 5. So, even without C.P.'s testimony, another witness could have testified in a similar regard. In light of these facts, the Court finds that there is not a reasonable probability that, but for Counsel's alleged errors, he would not have pled and would have instead insisted on going to trial. Therefore, Defendant's claim fails on both prongs of the *Strickland* test.

Dkt. 7-2 at 503–04. This ruling is neither contrary to established law nor an unreasonable determination of facts in light of the evidence. *See Nejad*, 830 F. 3d at 1288.

The state post-conviction court reasonably found that counsel's performance was not deficient under *Strickland*. C.P. and C.L. were witnesses subject to the State's notice of intent to use evidence of other crimes. Petitioner was present at the hearing on the admissibility of that evidence. Dkt. 7-2 at 24. Petitioner's counsel

deposed C.P. and C.L. before this hearing and challenged the C.P.'s inconsistent statements in that hearing. *Id.* at 61, 63. Petitioner's counsel made reasonable contentions regarding C.P.'s credibility. At a hearing on the admissibility of victim A.D.'s hearsay statements, Petitioner's counsel also questioned A.D.'s mother about the allegations made by C.P.

What is more, the trial court had not ruled on the admissibility of the witnesses' statements in a trial before Petitioner entered his plea agreement, and the Petitioner was informed that there would not be a ruling on that issue. *Id.* at 131. Similarly, when entering the plea, Petitioner stated that he had no impediment in reading or writing, had never received mental illness treatment, and did not feel that he suffered from any mental diseases or illness. *Id.* at 134. The record from the state post-conviction court does not reflect that counsel failed to investigate or contest the potential credibility of an important witness. Based on the proceedings, it is evident that counsel and Petitioner understood the potential importance of C.P. as a witness, and Petitioner accepted the plea knowing that there would not be a ruling on the admissibility of C.P.'s statements. These factors point to the objective reasonableness of counsel's performance and therefore fail to show deficiency.

Further, the state post-conviction court correctly applied *Strickland* in finding that Petitioner could not establish resulting prejudice. To show prejudice under *Strickland*, Petitioner must show that, but for the failure of counsel to make

Petitioner aware of C.P.'s weakness as a witness, Petitioner would not have entered the plea agreement. The state post-conviction court reasonably demonstrated that Petitioner had a strong motivation to enter the plea agreement irrespective of the admissibility of C.P.'s testimony. It was appropriate for the state post-conviction court to point to the much harsher mandatory life sentence Petitioner faced if he did not enter into the plea agreement. Moreover, had C.P.'s possible testimony been a factor that significantly contributed to Petitioner's acceptance of the plea deal, Petitioner likely would have chosen to wait for a ruling on the issue of admissibility.

Finally, the state court's determination that Petitioner could not demonstrate that counsel failed to conduct an adequate pretrial investigation of witness C.P. does not represent "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Nejad*, 830 F.3d at 1289. Petitioner presents no clear and convincing evidence to rebut the presumption of correctness. Disregarding the untimeliness of the instant petition and the procedural bar pertaining to this claim, the Court finds that Petitioner is still not entitled to relief on Ground One.

**b. Ground Two**

In Ground Two, Petitioner alleges counsel was ineffective by failing to explain the weaknesses of the State's case before advising Petitioner to accept the negotiated plea. Petitioner asserts that victim A.D.'s competency to testify as a witness was questionable and made the State's case weak. Petitioner claims that, had he understood this, he would not have entered the plea agreement and instead would have gone to trial.

Once again, the Court agrees with the finding of the state court that the evidence offered by the Petitioner to support this claim does not show deficiency of counsel or resulting prejudice. In so holding, the state court conducted the following thorough review of the record:

> As an initial matter, the Court declines to consider the State's case against Defendant weak based on counsel's allegedly deficient performance outlined in Grounds One through Three, as all three Grounds have been denied. The Court also finds that Defendant's vague and conclusory claims that counsel "was pressuring and coercing [him] into pleading" do not establish that he received ineffective assistance of counsel. *See Kennedy v State*, 54 7 So. 2d 912, 913 (Fla. 1989) (conclusory allegations of ineffective assistance of counsel are insufficient to warrant a post-conviction evidentiary hearing). Defendant testified under oath during the plea hearing colloquy that no one put pressure on him or forced him in any way to enter his plea, and that his plea was being entered freely and voluntarily. *See* Attachment 3. Therefore, as Defendant is not alleging affirmative misadvice by his attorney, the claim is refuted by the record. *See Wright v. State*, 447 So. 2d 961, 961 (Fla. 1st DCA 1984) (affirming trial court's decision to deny the defendant's post-conviction claim that his guilty plea was coerced because, before accepting the plea, the trial court determined that the plea was not coerced).

Next, Defendant does not point to any evidence supporting his claim that the victim was coerced into repeatedly changing her story. He does not explain how the story changed in any material way, and the alleged inconsistencies are not apparent from reviewing the record. Furthermore, he does not explain who coerced the victim or in what way she was coerced. This claim is therefore conclusory and does not warrant relief. *Freeman v. State*, 761 So. 2d 1055 (Fla. 2000).

Finally, regarding Defendant's claim that the victim was incompetent and unable to testify against him, the Court agrees with the State's argument that the record refutes such an assertion. "A witness is incompetent to testify if the trial court determines the witness is (1) unable to communicate to the jury; (2) unable to understand the duty to tell the truth; or (3) unable to perceive and remember the events." *Rutherford v. Moore*, 774 So. 2d 637, 646 (Fla. 2000); *see also* § 90.603, Fla. Stat. Furthermore, "[e]very person is competent to be a witness, except as otherwise provided by statute." § 90.601, Fla. Stat. As "[t]he prime test of testimonial competency of a young child is his intelligence rather than his age," *Bell v. State*, 93 So. 2d 575, 577 (Fla. 1957), Defendant cannot rely on the victim's young age alone to persuade the Court that she would have been incompetent to testify. Instead, Defendant points to the Child Protection Team ("C.P.T.") interview conducted with the victim after the allegations against Defendant were made to law enforcement. Defendant states that, "[w]hen considering the video that shows the victim not being competent enough to testify, the State's case was extremely weak." He argues that the victim "could not differentiate between play doe [sic] and 'poop,' nor could not differentiate the interviewer's color of hair." He also complains that some of the victim's statements conflict with subsequent statements made by her mother. A conflict between the victim's statements and her mother's testimony do not necessarily indicate that the victim is incompetent to testify. Witnesses regularly give conflicting testimony, and those inconsistencies can be pointed out at trial. Defendant seems to suggest that the inconsistencies prove that the victim is unable to appreciate the need to tell the truth or unable to remember the events of the case. Specifically, Defendant complains that the victim's answers do not concur with her mother's answers regarding the following: (1) who told her that boys have penises, and (2) whether she had ever seen pornography. However, the Court is not persuaded that the victim's answers during the C.P.T. interview indicate that she was lying or even misremembering facts. The victim stated in her C.P.T. interview that her mother told her that boys have penises. *See* Attachment 5.

Defendant complains that the mother testified (at some unspecified time) that she had never discussed with the victim what a penis is because of her young age. While Defendant seems to blame the victim for either lying or misremembering, it is equally likely that the mother is incorrect.

Similarly, Defendant complains that the victim stated that she has seen scary movies with "the butt, naked," and claims that this indicates that she has seen pornography, despite her mother's testimony to the contrary. Again, there is no indication of who is correct. But the Court notes that it is not clear that the victim was shown pornography. Nudity in a horror film, while inappropriate for a small child, is not the same thing as the graphic depictions of sexual behavior seen in X-rated movies. The Court declines to use the statements made by the victim in her C.P.T. interview as evidence that she was incompetent to testify.

Moreover, Defendant's assertions that the victim could not tell the difference between poop and Play-Doh or tell the color of the C.P.T. interviewer's hair are taken out of context. The victim indicated that she was pretending the Play-Doh was poop because it was brown. *Id.* And a mistake about hair color is not reason to assume that the child is lying or unable to appreciate the need to be honest. More importantly, though, the victim held an intelligible conversation where she related the events of the case, and the interviewer went through a series of questions to determine that the victim was able to differentiate between the truth and lie. *Id.* The victim's mother also testified that the victim is able to tell the difference between the truth and a lie when it comes to "something very serious." *See* Attachment 6. This caused the judge that presided over the motion hearing conducted on October 15, 2014, to state, "Even though the child is young, the impression I received from [the victim's mother] was that she was able to tell the truth, that she's aware of the importance of telling the truth." *See id*. Based on the C.P.T. interview, the fact that the victim would have been at least two years older if she would have testified during a trial (*see id.*), and the Court's assessment made at the relevant motion hearing, the Court finds that there is record evidence to indicate that the victim was able to communicate to the jury, understand the duty to tell the truth, and perceive and remember the events of the case. Therefore, the record refutes Defendant's claim that the case against him was weak because the victim was incompetent to testify as a witness. For all of the foregoing reasons, Ground Four will be denied.

Dkt. 7-2 at 505–09.

This analysis is neither contrary to clearly established federal law nor an unreasonable application of *Strickland*. The state court reasonably found that the performance of Petitioner's counsel met an objective standard of reasonableness. The state court correctly determined that the Petitioner's assertion that the State's case against him was weak had been refuted. In so doing, the state court examined the victim's direct allegations against the Petitioner, the victim's credibility in light of the victim's age, and the initial interview conducted with the Child Protection Team.

Nevertheless, Petitioner asserts that any reasonable counsel or reviewing court would view the interview of the victim and conclude that the allegations made therein could not possibly be true. The finding and reasoning of the state court demonstrate a clear and reasonable argument to the contrary, though, and this the Court cannot declare unreasonable. Reasonable counsel could have considered the State's case and not found the case to be as weak as Petitioner alleges. Indeed, the State offered multiple witnesses and potentially admissible former crimes or actions. For a finding of deficient performance by counsel, the State's evidence in support of the charges would need to be relatively baseless to the point that no reasonable counsel would advise his or her client to accept a negotiated plea agreement.

 Counsel's strategic decision in light of the evidence does not rise to the level of deficiency in a *Strickland* analysis. In sum, for the reasons explained by the state

court, it is not patently unreasonable that counsel evaluated the weight of evidence against Petitioner and determined that the State would likely prevail at trial. The state court appropriately found that Petitioner's counsel was not deficient, and it is not for this Court to dispute those findings without a showing that they were clearly erroneous.

Given that deficient performance by counsel was not found by the state court, there is no need to review the prejudice element of *Strickland*. However, notwithstanding the highly deferential standard given to the state court's decision, the Court similarly finds that prejudice is not established. Prejudice requires, at the very minimum, that the potential outcome likely would have been more favorable to Petitioner than the actual outcome. *See Jones v. Sec'y, Fla. Dep't of Corr.*, No. 21-13448, 2023 WL 334386, at *2 (11th Cir. Jan 20, 2023) (quoting *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)). Petitioner, before entering into a plea agreement, was facing a mandatory life sentence. Petitioner alleges that counsel created prejudice by advising him to accept a plea agreement resulting in fifteen years' imprisonment and two years' sex offender probation. Thus, the prejudice of which Petitioner complains appears to be that he received a fifteen-year prison sentence when he could have been acquitted at trial. But no reasonable court would take this position—there is no evidence to support it. As mentioned above, the State had significant evidence against Petitioner at the time of the plea deal. Accordingly, accepting the plea deal

likely did not adversely prejudice Petitioner. It most likely helped him. Petitioner is entitled to no relief on Ground Two.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *See* Rule 11(a) of Rules Governing Section 2254 Proceedings for the United States District Courts; *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To receive a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).

Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to a certificate of appealability or leave to proceed on appeal *in forma pauperis*. Accordingly, a certificate of appealability is denied, and leave to appeal *in forma pauperis* is denied.

## CONCLUSION

Petitioner Dunkum's Petition, Dkt. 1, is **DISMISSED WITH PREJUDICE**

as untimely. The Clerk is directed to enter judgment in favor of Respondent and

against Petitioner and close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 6, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record
Petitioner, *pro se*